IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **Malikie Innovations Ltd. and** § | | |
| **Key Patent Innovations Ltd.,** § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | **CIVIL ACTION NO. 1:25-CV-00258** | |
| § | | |
| **Bumble, Inc. and Bumble Trading, LLC** § | **JURY TRIAL DEMANDED** | |
| § | | |
| **Defendants.** § | | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendants Bumble, Inc. ("Bumble Inc.") and Bumble Trading, LLC ("Bumble Trading") (collectively, "Defendants") and, in support, allege the following:

## PARTIES

1. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3.   On information and belief, Defendant Bumble Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with a headquarters and a principal place of business in this District at: 1105 West 41st Street, Austin, Texas 78756.

4.   On information and belief, Defendant Bumble Trading is a corporation duly organized and existing under the laws of the State of Delaware, with a headquarters and a principal place of business in this District at: 1105 West 41st Street, Austin, Texas 78756. On information and belief, Bumble Trading is a wholly owned subsidiary of Bumble Inc.

5.   On information and belief, Defendants and/or their employees or officers direct and/or control the actions of their direct and indirect subsidiaries by, for example, inducing and contributing to the actions complained of herein. Bumble Inc. and Bumble Trading and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and/or using of the accused products and services in the United States, including in the State of Texas generally and this judicial District in particular.

## JURISDICTION AND VENUE

6.   Plaintiffs incorporate by reference paragraphs 1-5 herein.

7.   This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

8.   This District has general and specific personal jurisdiction over Defendants because, directly or through intermediaries, Defendants have committed acts within this District giving rise to this action; transact and conduct business, directly and/or indirectly, in this District

and the State of Texas; and transact and conduct business with residents of this District and the State of Texas.

9. Defendants have infringed and continue to infringe the Asserted Patents (defined below) within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted Patents, including without limitation products and services that, when made or used, practice one or more claims of the Asserted Patents. Defendants, directly and through affiliates, subsidiaries, and intermediaries, make, use, sell, license, offer for sale, import, ship, distribute, advertise, market, promote, and/or otherwise commercialize such infringing products and services in or into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

10. Defendants are doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States, and have committed acts of infringement in this District.

11. On information and belief, Defendants make, use, sell, offer to sell, and/or import infringing products and services into and/or within this District, maintain a permanent and/or continuing presence within this District, and have the requisite minimum contacts with this District such that this venue is a fair and reasonable and convenient one. Upon information and belief, Defendants have transacted and, at the time of the filing of the Complaint, are continuing to transact business within this District.

12. Defendants purposefully direct or control the sale of the accused products and services online and/or in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expect and intend that the accused products and services will be so sold and used in this District. Defendants purposefully place the accused products and services—whether by themselves or through subsidiaries, affiliates, or third parties—into a supply chain, knowing that the accused products and services will be sold and used in the United States, including Texas and in this District. Therefore, Defendants also facilitate the sale and use of the accused products and services in Texas.

13. Defendants utilize established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products and services to consumers and other users in the United States, including providing links via their websites, platforms, and online stores, to consumers, distributors, and solution partners offering such products and services and related products and services for sale. Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing accused products and services in Texas, including in this District.

14. This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE §§ 17.041, 17.042 et seq., the Texas Long Arm Statute.

15. Defendants are doing business, either directly or through respective agents, subsidiaries, or intermediaries, on an ongoing basis in this judicial District and elsewhere in the United States and have committed acts of infringement in this District.

16. Defendants are subject to this Court's jurisdiction pursuant to due process and the Texas Long Arm Statute due at least to their substantial business activities in this State and District, including (a) their past and present infringing activities, (b) regularly doing or soliciting business

in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from products or services, including software and online services, provided to customers in Texas.

## PATENTS-IN-SUIT

17. Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 8,688,152 (the "'152 Patent"); 10,779,156 (the "'156 Patent"); 8,334,847 (the "'847 Patent"); 8,671,208 (the "'208 Patent"); and 8,175,625 (the "'625 Patent") (collectively, the "Asserted Patents").

18. The Asserted Patents were developed by inventors working for BlackBerry. BlackBerry developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to mobile devices and related software and wireless communications technology, among other technology and technological advances. Some of these groundbreaking inventions are described and claimed in certain of the Asserted Patents.

19. The '152 Patent, entitled "Method for creating a peer-to-peer immediate messaging solution without using an instant messaging server" was duly and lawfully issued on April 1, 2014. A true and correct copy of the '152 patent is attached hereto as Exhibit 1.

20. The '156 Patent, entitled "System and methods for data communications in a wireless communication system" was duly and lawfully issued on September 15, 2020. A true and correct copy of the '156 patent is attached hereto as Exhibit 2.

21. The '847 patent, entitled "System Having User Interface Using Object Selection and Gestures" was duly and lawfully issued on December 18, 2012. The '847 patent has been in full force and effect from its issuance. A true and correct copy of the '847 patent is attached hereto as Exhibit 3.

22. The '208 Patent, entitled "System and method for adaptively routing peer-to-peer (P2P) communications" was duly and lawfully issued on March 11, 2014. A true and correct copy of the '208 patent is attached hereto as Exhibit 4.

23. The '625 Patent, entitled "Messaging protocol/service switching methods and devices" was duly and lawfully issued on May 8, 2012. A true and correct copy of the '625 patent is attached hereto as Exhibit 5.

24. On July 2, 2024, Malikie sent a letter addressed to Bumbles Inc.'s Interim General Counsel, Ms. Elizabeth Monteleone, offering a license to Malikie's patent portfolio.

25. Malikie's July 2, 2024 letter specifically identified the '156 patent, the '152 patent, and the '847 patent, among others.

26. Malikie's July 2, 2024 letter also identified a set of exemplary products and services that Malikie believes were and are infringing these patents (on a patent-by-patent basis). Malikie's letter also specifically noted that its portfolio includes patents relating to instant messaging, gesture recognition, security, notifications, and application management and that Malikie is willing to offer Defendants a license so that it could continue its use of the patented technologies. The July 2, 2024 letter was sent via courier and e-mail.

27. On information and belief, Defendants received Malikie's July 2nd letter by courier.

28. On information and belief, Defendants received Malikie's July 2nd letter by email.

29. Malikie followed up on its July 2nd letter by email, including emails sent in July, August, October, November, and December of 2024, as well as January and February of 2025.

30. Neither Ms. Elizabeth Monteleone nor anyone representing Defendants have responded to Malikie's July 2nd letter.

31.     Malikie sent an additional letter on February 11, 2025, identifying the '625 patent and the '208 patent, and products and services that Malikie believes were and are infringing these patents.

32.     No one from or representing Defendants has responded to the February 11th letter.

33.     Because no one from or acting on Defendants' behalf ever responded to Malikie's outreaches, Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Defendants are willfully infringing.

## ALLEGATIONS AND ASSERTED PATENTS

34.     BlackBerry was a pioneer in mobile device technology that has revolutionized the way the world lives and does business.  For example, BlackBerry developed numerous innovations around messaging techniques that improve the way a mobile device can communicate with remote servers, and improve the speed and efficiency of mobile device operation.

## FIRST CLAIM

### (Infringement of the '152 Patent)

35.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1-34 of their Complaint.

36.     The claims of the '152 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

37.     BlackBerry developed the technology in the '152 patent to solve several technical problems associated with communication and mobile devices. One technical problem was mobile devices were inadequate, in some ways, when comparing with legacy IM solutions, i.e., desktop. The small screens and limited memory in mobile stations forced users "to accept the poor performance and experience of existing IM solutions because they want or need to reach land-line

7

users operating legacy desktop IM Solutions and have no other alternatives to select from." '152 patent, 2:1-4. Conversely, "land-line and desktop-based IM solutions fall short of what a user that is often mobile wants and needs, namely good IM functionality wherever they may be with their mobile station." '152 patent, 1:62-65.

38. BlackBerry's solution was "a peer-to-peer immediate messaging solution for mobile stations that does not utilize an instant messaging server or the like that tracks state information, such as presence and 'buddy list' information, for each mobile station." '152 patent, 1:28-32.

39. The '152 patent is generally directed to providing immediate peer-to-peer messaging between mobile stations without requiring a server.

40. Defendants have been on notice of the '152 patent and a specific factual basis for its infringement of the '152 patent since at least July 2, 2024.

41. On information and belief, Defendants did not take any action to stop its infringement of the '152 patent after July 2, 2024.

42. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 22 and 24 of the '152 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including devices responsible for sending or receiving messages and indicating user availability based on messaging activity with contacts in a contact list.  An exemplary claim chart concerning one way in which Defendants' infringe claims 22 and 24 of the '152 patent is attached as Exhibit 6.

43. Defendants have also indirectly infringed, and continue to indirectly infringe, the '152 patent under 35 U.S.C. § 271(b) and (c).

44. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 22 and 24 of the '152 patent under 35 U.S.C. § 271(b), and continue to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 6.

45. Defendants have also contributed to the direct infringement of at least claims 22 and 24 of the '152 patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '152 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import products or services or software that enable sending or receiving messages and indicating user availability based on messaging activity with contacts in a contact list (such as that shown in Exhibit 6) that are not a staple article of commerce and are incapable of substantial noninfringing use.

46. Defendants' infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

### (Infringement of the '156 Patent)

47. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-46 of their Complaint.

48. The claims of the '156 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

49. The problem that BlackBerry solved when it developed the '156 patent was the ability for a user to "take their mobile device from their home country or region and travel elsewhere and still receive service from a foreign network carrier." '156 Patent, 1:43-45.

50. BlackBerry enabled travelling mobile device users to gain service from a foreign network carrier. BlackBerry developed a mechanism "to forcefully, easily and automatically alter the services and/or the features offered to and the behaviour of a mobile device, or devices, based the location and abilities of the mobile device." '156 Patent, 1:58-61.

51. The '156 patent is generally directed to enabling wireless data communications between a first and a second communications device, including providing location information and capability information associated with at least one of the first and second communications devices.

52. Defendants have been on notice of the '156 patent and a specific factual basis for its infringement of the '156 patent since at least July 2, 2024.

53. On information and belief, Defendants did not take any action to stop its infringement of the '156 patent after July 2, 2024.

54. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 14 and 19 of the '156 patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including products or services which receive notification of a message and directly communicate with the host service to retrieve the message. An exemplary claim chart concerning one way in which Defendants infringe claims 14 and 19 of the '156 patent is attached as Exhibit 7.

55. Defendants have also indirectly infringed, and continue to indirectly infringe, the '156 patent under 35 U.S.C. § 271(b) and (c).

56. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 14 and 19 of the '156 patent under 35 U.S.C. § 271(b), and continue to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 7.

57. Defendants have also contributed to the direct infringement of at least claims 14 and 19 of the '156 patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '156 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import devices or software including devices which receive notification of a message and directly communicate with the host service to retrieve the message (such as that shown in Exhibit 7) that are not a staple article of commerce and are incapable of substantial noninfringing use.

58. Defendants' infringement have been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of '847 Patent)

59. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-58 of their Complaint.

60. The claims of the '847 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

61. The problem BlackBerry solved with the '847 patent was the growing complexity of the virtual interface. The virtual interface included a number of controls and/or images which

resulted in a crowded display. "Display crowding may make it difficult for the user to select displayed objects associated with these functions due to their close proximity with one another." '847 patent, 1:38-41.

62. The '847 patent is generally directed to systems and methods for providing a user interface for controlling a display using an interface application to provide, in a multilayer display arrangement, a container with interface controls that are selectable based on the magnitude of the motion or manipulation of the display.

63. Defendants have been on notice of the '847 patent and a specific factual basis for its infringement of the '847 patent since at least July 2, 2024.

64. On information and belief, Defendants did not take any action to stop its infringement of the '847 patent after July 2, 2024.

65. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 14 of the '847 patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects. An exemplary claim chart concerning one way in which Defendants infringe claim 14 of the '847 patent is attached as Exhibit 8.

66. Defendants have also indirectly infringed, and continue to indirectly infringe, the '847 patent under 35 U.S.C. § 271(b) and (c).

67. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 14 of the '847 patent under 35 U.S.C. § 271(b), and continue to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 8.

68. Defendants have also contributed to the direct infringement of at least claim 14 of the '847 patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '847 patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import products or software including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects (such as that shown in Exhibit 8) that are not a staple article of commerce and are incapable of substantial noninfringing use.

69. Defendants' infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## FOURTH CLAIM

**(Infringement of the '208 Patent)**

70. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-69 of their Complaint.

71. The claims of the '208 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

72. The problem BlackBerry solved with the '208 patent was determining whether a proxy server was needed when establishing a connection between two endpoints. For example, the '208 patent states "Server based solutions for setting up communications sessions are often useful because the registrar and proxy can implement admission control and traffic routing policies which may, for example, mitigate network congestion. On the other hand, once a server based communication session has been established between two end-points, it is often desirable to convert the session to P2P, by removing the proxy from the communication path between the involved end-points." '208 patent, 1:30-37.

73. The '208 patent is generally directed connecting communication devices in a network.

74. Defendants have been on notice of the '208 patent and a specific factual basis for its infringement of the '208 patent since at least February 11, 2025.

75. On information and belief, Defendants did not take any action to stop its infringement of the '208 patent after February 11, 2025.

76. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '208 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software that establishes a peer-to-peer connection between two devices if one is possible and establishing communication between the two devices using a proxy when a peer-to-peer connection is not possible, such as Defendants' platform's video chat feature. An exemplary claim chart concerning one way in which Defendants infringe claim 1 of the '208 patent is attached as Exhibit 9.

77. Defendants have also indirectly infringed, and continues to indirectly infringe, the '208 patent under 35 U.S.C. § 271(b) and (c).

78. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '208 patent under 35 U.S.C. § 271(b), and continue to do so, by, for example, selling and offering access to its products and services.  *See* Exhibit 9.

79. Defendants have also contributed to the direct infringement of at least claim 1 of the '208 patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '208 patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import products or software that that establishes a peer-to-peer connection between two devices if one is possible and establishing communication between the two devices using a proxy when a peer-to-peer connection is not possible (such as that shown in Exhibit 9) that are not a staple article of commerce and are incapable of substantial noninfringing use.

80. Defendants' infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

### FIFTH CLAIM

**(Infringement of the '625 Patent)**

81. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-80 of their Complaint.

82. The claims of the '625 patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

83. The problem BlackBerry solved with the '625 patent was allowing for switching communications from a first messaging protocol to a second messaging protocol. For example, devices use different messaging protocols and different messaging protocols may be preferable to different devices. As such, the '625 patent provides for switching between messaging protocols for communications between two devices. '625 patent, 1:62-67.

84. The '625 patent is generally directed to changing a mode of communication from a first messaging service/protocol to a second messaging service/protocol for communications between devices.

85. Defendants have been on notice of the '625 patent and a specific factual basis for its infringement of the '625 patent since at least February 11, 2025.

86. On information and belief, Defendants did not take any action to stop its infringement of the '625 patent after February 11, 2025.

87. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '625 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software that switches communications between devices from a first protocol to a second protocol, such as Defendants' platform's video chat feature. Exemplary claim chart concerning one way in which Defendants infringe claim 1 of the '625 patent is attached as Exhibit 10.

88. Defendants have also indirectly infringed, and continue to indirectly infringe, the '625 patent under 35 U.S.C. § 271(b) and (c).

89. Defendants have knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '625 patent under 35 U.S.C. § 271(b), and continue to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 10.

90. Defendants have also contributed to the direct infringement of at least claim 1 of the '625 patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '625 patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, and/or import products or software that switches communications between devices from a first protocol to a second protocol (such as that shown in Exhibit 10) that are not a staple article of commerce and are incapable of substantial noninfringing use.

91. Defendants' infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## **PRAYER FOR RELIEF**

WHEREFORE, Malikie and KPI pray for judgment against Defendants as follows:

92. That Defendants have infringed each of the Asserted Patents, and unless enjoined, will continue to infringe the Asserted Patents;

93. That Defendants' infringement of the Asserted Patents has been willful;

94. That Defendants pay Malike and KPI damages adequate to compensate for its past infringement of the Asserted Patents, and present and future infringement of the Asserted Patents, together with interest and costs and in no event less than a reasonable royalty under 35 U.S.C. § 284;

95. That Defendants pay prejudgment and post-judgment interest on the damages assessed;

96. That Defendants pay Malike and KPI enhanced damages pursuant to 35 U.S.C. § 284;

97. That Defendants be ordered to pay ongoing royalties to Malike and KPI for any post-judgment infringement of the Asserted Patents;

98. That this is an exceptional case under 35 U.S.C. § 285; and that Defendants pay Malike and KPI's attorneys' fees and costs in this action; and

99. That Malike and KPI be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Malikie and KPI hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Mark D. Siegmund*
Taylor Mauze
tmauze@reichmanjorgensen.com
Jolene Robin-McCaskill (*pro hac vice* forthcoming)
jrobin-mccaskill@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
515 Congress Avenue, Suite 1900
Austin, TX 78701
(650) 623-1401

Connor S. Houghton (*pro hac vice* forthcoming)
choughton@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
1909 K Street, NW, Suite 800
Washington, DC 20006
(202) 894-7310

Matthew Berkowitz (*pro hac vice* forthcoming)
mberkowitz@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401
mberkowitz@reichmanjorgensen.com

Khue Hoang (*pro hac vice* forthcoming)
khoang@reichmanjorgensen.com
Patrick Colsher
pcolsher@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965


Of Counsel:

Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509
msiegmund@cjsjlaw.com

*Attorneys for Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd.*